All right. Oh, yes. Oh, yes. Oh, yes. The Honorable Teleport Fifth District State of Illinois is now in session. Please be seated. Good morning. Let me call the first case in the matter of Deborah B. Please proceed. Good morning. May it please the Court of Counsel. My name is Barbara Gobin. I represent the respondent, Deborah B., in this appeal of an involuntary medication order in Irving, Madison County. Basically, because of time constraints, I'm going to argue the two main sticky issues in this case. The first one is the issue of mootness. As you well know, most mental health orders expire within 90 days. But there are three exceptions to the mootness doctrine which appellate courts can review involuntary medication orders. As the Supreme Court said, most cases, mental health cases, do satisfy one of the three exceptions to mootness. And the courts have to look at these cases on a case-by-case basis. In this case, we argue that all three apply, but only one has to satisfy, of course. And here, the public interest exception to mootness really would apply because the issue of whether the criteria is suffering for involuntary admission. There is very little case law on that. There's only been two appellate cases, Lisa P. and Wendy T., that affirmed on that issue. And that was suffering plus deterioration of ability to function. So, basically, the Supreme Court in Rita P. said that the public interest exception can apply when it's a case of first impression. Since there's very little case law on the issue of suffering, we would argue that that would apply under that exception to mootness. Another issue, my counsel would argue that, well, this is just a sufficiency of evidence case. But it isn't because there is really confusion by the state's witness and by courts whether the suffering criteria is, it's not defined in the code. And there is confusion whether it's suffering from symptoms of mental illness or suffering per se, as in pain. And I'll get into that later on. The other two exemptions is the collateral consequences. My client, unlike the plaintiff at the respondent, Alfred H.H., had no prior medication order. And her last one was over ten years prior to this court case, which does affect the FOIA licensing, which is every five years for mental health issues. And the last exception to mootness that we would argue is capable of repetition because the issue, it's the definition of suffering. So it's not defined in the mental health code. And there needs to be clarification of how to properly and constitutionally apply the suffering element. And the meat of the case is to, as you all know, to constitutionally, involuntarily medicate someone. You have to be a danger to yourself or others, or your health is at risk. That was the Supreme Court case in Washington v. Harper. That was affirmed by Robert S. Illinois Supreme Court case. So here, the lower court found that there was a deterioration of ability to function and suffering, but no threatening behavior. And the state only has to approve one of the three criteria. Basically, with regard to the deterioration of ability to function, really the wrong standard was applied. Because here, there was evidence to prove the doctor testified her physical health was not at risk. And prior precedent with regard to deterioration of ability to function is basically when someone's so psychotic, or so mentally ill that they don't need their physical, like they don't treat medical conditions, basic necessities here. And even though she had symptoms of mental illness, she was writing letters, she thought she was the queen of Czechoslovakia, she was writing to the colonels, that delusions in and of itself, there's three different precedents, that delusions in and of itself aren't sufficient to prove this element for involuntary medication. Now, the state would argue, well, she was arrested for disorderly conduct, she was found unfit, that should be sufficient to prove, in part, to prove this deterioration of ability to function. But courts have held, because of the liberty interests involved, there must be a narrow reading of the criteria for this. So if you allow someone who's just arrested for disorderly conduct or found unfit to qualify for involuntary medication, that's not what the legislature said. They didn't say all forensic patients would require this. And also, just because at one point you were arrested for this doesn't mean that currently you're dangerous or have a deterioration of ability to function. The key issue here, and actually for once I did preserve this on the record, is the issue of suffering. And I think the psychiatrist was confused. He was saying suffering from symptoms of mental illness versus, and it's part of the legislative thing, they use the term suffering, and oftentimes you put suffering from mental illness or suffering from symptoms instead of suffering from pain. And usually suffering, the plain language, it's not defined in the mental health code, suffering. But as I put in detail in the brief, suffering is usually considered pain, and there's symptoms of it that it's enough to endanger yourself or others. So I've had clients who have cried so much their physical health was at risk, or who have insomnia enough that their physical health was at risk. So your interpretation is that it cannot be only mental suffering. It has to have a physical component? Well, my interpretation, it could be suffering if your physical health is at risk from it. Well, that's kind of what I was saying, I think. Yeah, there has to be outward evidence of it. And outward being some physical? Manifestation of it. Like what? Like crying all the time or having no sleep. Or I guess you could also say there would be evidence of such severe paranoia that you don't eat, you know, which you go into the other category. But to constitutionally do it under the issue of suffering, you know, your health has to be at risk. And here, just because she wrote she had delusional, she had abnormal beliefs that she was queen of Czechoslovakia and so on, that's not sufficient enough to involuntarily medicate someone. And I think there's confusion, there's no really case law precedent on this of what is the suffering, what constitutes suffering versus suffering from the symptoms. I think there's, you know, psychiatrists use all the time the term suffering from. And so he, the psychiatrist testified to her grand delusions and her, and that was their main, his main testimony about that. What about her deterioration of her ability to function? Thinking that she's the queen of Czechoslovakia makes her pretty, I think that in and of itself would almost by definition mean that she's not functioning in a very, and she also signed some documents as God, I think. Right. That would greatly impair her ability to function, I would believe. Well, I mean, you have, there's precedent, you have freedom of thought and freedom, and delusions in and of themselves aren't sufficient to one involuntary medication order. Because it's such a state threshold that it has to be, you know, delusions plus behavior that endangers her physical health. And the doctor said her physical health was fine at this point. She wasn't placed in restraints and seclusions. You know, she did, granted she did interfere with other patients and was concerned about them making phone calls. But the court did not find threatening behavior. And the precedent supports under deterioration of ability to function were cases where the respondent was so ill that they weren't eating or sleeping. And so it was an obvious connection to the physical health. So it's your belief that it doesn't, the suffering and the deterioration of ability to function can, again, not just have a mental health component in the sense that they're not trying to improve her mental health ability to function. But it, again, you're saying has to have some impact on her physical well-being. Right. Either a danger to herself or others or physical health. Because, you know, you have a right to refuse treatment, you know. And also there's the issue she's unfit to stay in trial, so you can't try to get her stable enough to become fit, too. I mean, there's that. But constitutionally, to do the involuntary, you have to, the state, to be valid, it has to be either dangerous or, you know, physical health to self or others. And here, this was a, just to be honest, I mean, I wish she didn't have the symptoms. I wish she didn't have the delusions. But if the legislator wanted it that broad, they would have said that. But if it was that broad, it would be facing it being unconstitutional because it has to be for that limited reason. Because it's such an intrusive action by the state. Thank you, counsel. Argument for the appellate. May it please the court, Whitney Atkins for the state of Illinois, Barbara. The respondent's appeal is moot. The 90-day period that covered the trial court's order has passed. And this case does not fall under any of the three exceptions to mootness, which would be public interest, collateral consequences, and capable of repetition yet evading review. It does not fall under the public interest exception because, as the respondent alluded to, this is really just a sufficiency of the evidence claim. And the law states, it's well settled, that sufficiency of the evidence claims do not fall under the public interest exception. For obvious reasons, they would not guide public officials because it would just, the resolution would be so specific to the evidence in that isolated case. And the public interest exception is not intended to allow courts to review claims merely to set precedent. The respondent argues that this is more than just a sufficiency of the evidence claim, that the key issue is the lack of definition of suffering. But suffering is a very popular word. It's well understood. And there's an adequate and sufficient definition in the dictionary. And the trial court had no problem applying the facts of this case to the term suffering. So there's no need to use this case as an opportunity to define suffering. The sum of her arguments are that the state did not provide sufficient evidence to establish the existence of two elements to allow for the authorization of involuntary medication. So what you're saying is even if we applied Ms. Goldman's standard that there had to be some kind of physical manifestation, we would still just be determining whether there was sufficient evidence to meet that standard. Correct, correct. And that there's no need to carve out more case law. This is not sparse. If you just were to apply the law that is existent now to the facts of this case, it would do nothing to further guide the public on this issue. So you're saying that issue is settled? Yeah, it's very well settled. What does the case law say about what has to be proved to prove suffering? Well, there's a third district case, Lisa P., which I've cited. And basically, it's right on point. The respondent in that case was very paranoid. She believed that she was a victim and that her family was out to get her and that the world was evil. And the psychiatrist found that this is evidence of suffering due to her extreme paranoia. And that's exactly what the psychiatrist in this case found. And the respondent is trying to herself define what constitutes sufficient paranoia. But that is not her determination to make. That is the psychiatrist's determination to make. What paranoia is adequate. And here, the psychiatrist found that her paranoia was sufficient enough to constitute suffering. And common sense would indicate that she is greatly paranoid. She believed that she was God. She wrote letters to the Cardinals baseball team. But I thought what was really telling here was if you read the transcript of the trial, she is not able to respond to questions that are asked of her. She goes off tangents on subject matters that are not related at all, completely irrelevant. And she said that her daughter was her psychologist. So she definitely has delusions. I don't think anyone disputes that she was suffering from a mental illness. And, however, every person suffering from a mental illness who is involuntarily committed is not also automatically subject to involuntary medication. I mean, they're two different standards. So don't you have to prove something more than mental illness to involuntarily require medication? Well, yeah, I think somewhat. I mean, if you look at Lisa P., that really is mental illness. I mean, if it's just mental illness, then everybody who's involuntarily committed, it's the same thing, isn't it? Well, no, because it's the symptoms that are exhibited as a result of the mental illness. I mean, that is pretty much everyone that has a mental illness might not be affected to this extent. And the extent to which the respondent in other cases were affected warranted involuntary medication. But I would argue just I think that the state could stand on that alone, that the death of her mental illness was alone. But alone was sufficient enough. But Ms. Goldman is saying that she might be very happy thinking she's the queen of Czechoslovakia, and therefore she's not suffering, and therefore we have no right to force her to take medication. Well, I mean, she also was arrested for aggravated battery, had to be tasered, had to be confined to a silent chair in the jailhouse. But there are many people that have that recourse applied to them that aren't subject to involuntary medication. And the doctor himself said that she was not a threat to herself or others directly. Again, I think the aggregate of her jailhouse behavior, the reason why she was brought there, being arrested, the extent of her paranoia, she wasn't sleeping well, she was getting into other patients' business, she was not able to be treated through other methods, and she is there because she was found unfit. I think the aggregate of all those things is enough to warrant involuntary medication. And I understand the point that this is a very important fundamental liberty, and we don't want to oppress people and find that anyone who is suffering from mental illness must be treated, but the law is what the law is, and applying the facts of this case-to-case law, the order for involuntary medication was proper. I think that the psychiatrist was trying to treat her, and other methods were found to be inadequate, and the law states that under these circumstances, she falls under what is required to be involuntarily medicated. But, you know, there were, I will say there were some physical manifestations, however, being that she wasn't sleeping well, and she was threatening to people. When she was arrested, she was threatening to an officer. She was suicidal. So she did have some threatening behavior to both herself and to others, and the doctor stated that she was physically restless. So there was danger to herself and to others, and the law states that her behavior when she was arrested and in the jailhouse, that can be considered. Thank you, Counsel. Okay. Revetal, let's go. Your Honors, with regard to the issue, really there's very little case law on this issue of suffering. There's only two cases, and they really don't address what constitutes suffering versus suffering from versus suffering pain. And unfortunately, because of, as I mentioned before, under psychiatrists often use the term suffering from and use the symptoms instead of suffering from pain, and here the doctor during the cross confirmed that her health was not at risk, and she was eating and sleeping properly. She owned her own home and had family support. And that's, I mean, when we get to the deterioration in functioning, I mean, prior to these events, the evidence is she was doing fine. She was caring for some other people and doing well, and then she ends up thinking she's queen of Czechoslovakia and this arrest and so forth and so on. That sounds like a deterioration in functioning. Right. But it's not enough to warrant involuntary. And that's where we get to the dividing line between involuntary commitment and involuntary medication. Right, because you have to have, let's say, for example, I have often lost clients who have delusions that their food is poisoned, and because of that delusion that the food is poisoned, they won't eat, or there's a conspiracy against doctors. So that's how the delusions would affect your physical health and well-being. And often courts here are, I mean, certainly courts from a number of judges I've practiced, I mean, there's just the statute is sparse on this issue of suffering, you know, and they need some guidance on this. And the Supreme Court said, and this court said in Joseph Vand, rejected a sufficiency of evidence argument as a bar for weakness. But I would say this is not just a sufficiency of evidence, it's the definition of suffering, and also there's not too much case law of deterioration of ability to function. There's a couple, but at least it's a little bit more, and that's more common sense than the suffering issue. And besides, even if you determine there is enough case law on those issues, she's had, there is the collateral consequences. She's had no, there's nothing on the record that she had an involuntary medication order, and her last involuntary admission or admission to Alton Mental Health Center was in 2002. So, I mean, there is a time and space there for regulations because there are bars and licensing bars for having mental illness. So, and for those reasons, we respectfully request your wisdom on this issue of the suffering, and I would say reverse this court order because basically her behavior was, the court, Supreme Court unconstitutionally applied the criteria because her health was not risk, and she was not a danger to herself or others. Thank you, counsel. We'll take this case under advisement, issue a written disposition due court.